Filed 3/14/25  Thompson Team Real Estate v. Gutierrez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THOMPSON TEAM REAL ESTATE, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LUIS GUTIERREZ et al., <br><br> Defendants and Respondents. | B333263 <br><br> (Los Angeles County Super. Ct. No. 21STCV40518) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Serena R. Murillo, Judge.  Reversed with directions.

Lipow & Harris and Jeffrey A. Lipow for Plaintiff and Appellant.

Spierer, Woodward, Corbalis & Goldberg, Stephen Goldberg; Jeff Lewis Law, Jeffrey Lewis and Kyla Dayton for Defendants and Respondents.

# INTRODUCTION

The statute of frauds applies to an "agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate, or to lease real estate for a longer period than one year, or to procure, introduce, or find a purchaser or seller of real estate or a lessee or lessor of real estate where the lease is for a longer period than one year, for compensation or a commission." (Civ. Code, § 1624, subd. (a)(4).) In other words, agreements to pay a real estate broker a commission.

Thompson Team Real Estate, Inc. is a licensed real estate broker that represented Luis Gutierrez and Anatoly Ioda in the purchase of two residential properties. Thompson earned approximately $68,000 in commissions on the two transactions. However, in reliance on allegedly false statements by Gutierrez and Ioda that they would develop townhomes on the properties and list them for sale with Thompson, Thompson "transferred, authorized or conveyed" the $68,000 to Gutierrez and Ioda. Gutierrez and Ioda did not develop, and never intended to develop, townhomes for sale on the two properties Thompson helped them purchase.

Were Thompson suing Gutierrez and Ioda to recover commissions based on an oral agreement to represent them in connection with the two real estate purchases, or to recover commissions on the townhomes Gutierrez and Ioda never built for sale, the statute of frauds would apply, and Thompson, as a real estate broker, would probably be unable to invoke the doctrine of estoppel to plead the statute of frauds. But Thompson did not sue Gutierrez and Ioda to recover unpaid commissions from the two transactions or future commissions from the

2

townhomes that were never built for sale.  Thompson sued Gutierrez and Ioda for fraudulently inducing it to pay them the $68,000 it had earned and had a (written) contractual right to receive from escrow by promising they would give Thompson business in the future.  Because, contrary to the trial court's ruling on demurrer, the statute of frauds does not apply to that claim, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Gutierrez Induces Thompson To Transfer Earned Commissions by Promising Future Business*

Thompson is a licensed real estate broker.[1]  Gutierrez and Ioda are real estate developers.  Before the two transactions at issue in this case, Thompson represented Gutierrez and Ioda as their broker in the purchase of residential property in Redondo Beach.  At that time Gutierrez and Ioda told Thompson that, if it "transferred, assigned or conveyed" to them the commission Thompson earned in the transaction, Gutierrez and Ioda would develop two townhomes on the property and use Thompson as their broker to sell the townhomes.  It worked:  Thompson gave Gutierrez and Ioda its commission, and Gutierrez and Ioda built two townhomes on the property and "listed them for sale through" Thompson.

In September 2019 they did it again.  Thompson represented Gutierrez as his broker in the purchase of residential

---

[1]    We recite the facts as alleged in the operative second amended complaint, which we accept as true for purposes of reviewing the trial court's ruling on Gutierrez and Ioda's demurrer.  (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 786.)

property on Prospect Avenue in Redondo Beach. Gutierrez signed a document titled Disclosure Regarding Real Estate Agency Relationship that identified Thompson as his broker. Gutierrez purchased the property for $1.875 million, which entitled Thompson to a commission of $37,500. The purchase agreement between Gutierrez and the seller provided that the seller would pay the entire commission to his broker and that the seller's broker would pay Thompson half of the commission from the proceeds in escrow. This time Gutierrez and Ioda told Thompson that they intended to demolish the existing structures on the property and build five townhomes, and again told Thompson that, if Thompson "transferred, assigned, or conveyed" to them the commission Thompson had earned as their broker in connection with the purchase of the Prospect property, "upon completion of the represented development [they] would list the five townhomes for sale with" Thompson. Relying on the representations by Gutierrez and Ioda and on its past business transactions with them, Thompson, though "contractually and legally entitled to possession of $37,500 in commissions for the transaction," again "transferred, assigned or conveyed" its $37,500 commission to Gutierrez and Ioda.

And in February 2020 the parties did it one more time. Thompson represented Gutierrez as his broker in the purchase of residential property on Belmont Lane in Redondo Beach. Gutierrez again signed a document titled Disclosure Regarding Real Estate Agency Relationship that identified Thompson as his broker. Gutierrez purchased the property for $1.225 million, which entitled Thompson to a commission of $30,625. The purchase agreement between Gutierrez and the sellers again provided that the sellers would pay the entire commission to

4

their broker and that the sellers' broker would pay Thompson half of the commission from the proceeds in escrow. For this property, Gutierrez and Ioda told Thompson that they intended to demolish the existing structures and build two townhomes, and again told Thompson that, if Thompson paid them the commission Thompson earned as their broker in connection with the purchase of the Belmont property, "upon completion of the represented development [they] would list the two townhomes for sale with" Thompson. Relying on the representations by Gutierrez and Ioda and on its past business transactions with them, Thompson, though "contractually and legally entitled to possession of $30,625 in commissions for the transaction," again "transferred, assigned or conveyed" its $30,625 commission to Gutierrez and Ioda.

The statements by Gutierrez and Ioda regarding the Prospect and Belmont properties, however, were knowingly false. "The truth was that [Gutierrez and Ioda] intended to keep the homes existing on Belmont and the townhomes constructed on Prospect for themselves alone, to rent out the homes for their own profit, and not to sell the homes on Belmont and Prospect properties as represented to" Thompson. By reasonably relying on Gutierrez and Ioda's misrepresentations and the parties' prior business relationship, Thompson lost $68,125, i.e., the amount of the commissions it "transferred, assigned or conveyed" to Gutierrez and Ioda.

B.     *Thompson Files This Action; Gutierrez and Ioda Demur*

Thompson filed this action to recover the $68,125 Gutierrez and Ioda induced Thompson to "transfer, assign or convey" to

them by promising future brokerage business. In its first cause of action for fraud Thompson alleged Gutierrez and Ioda falsely represented they would construct seven townhomes for sale, five on Prospect and two on Belmont, when in fact Gutierrez and Ioda never intended to sell townhomes on the properties and instead intended to keep them as rental properties. In its second cause of action for conversion Thompson alleged it was entitled to immediate possession of the $68,125 it had earned in the Prospect and Belmont transactions and had transferred to Gutierrez and Ioda. In its third cause of action Thompson alleged Gutierrez and Ioda "committed the fraudulent acts alleged herein to enable them to knowingly steal the $68,125" in violation of Penal Code section 496, "which provides a civil remedy for all theft, not just receiving stolen property." And in its fourth cause of action for restitution, Thompson alleged that Gutierrez and Ioda were "unjustly enriched at the expense of" Thompson and that Thompson was "entitled to restitution and disgorgement of" the $68,125.

Gutierrez and Ioda demurred to the operative second amended complaint. They argued Thompson's first cause of action for fraud was barred by the statute of frauds, which as stated, requires an agreement for broker compensation or commission to be in writing. Gutierrez and Ioda argued that, "[a]bsent a written agreement entitling [Thompson] to a commission on the Prospect and Belmont properties, [Thompson] cannot allege fraud regarding [their] representations since the representations and alleged damages involve said commissions." Gutierrez and Ioda contended: "There is no valid written agreement entitling [Thompson] to a commission payable by [Gutierrez and Ioda]. Without entitlement to any such

commission, [Thompson] cannot show that it relied on [Gutierrez and Ioda's] representations in assigning, conveying, or transferring commissions that [Thompson] was not entitled to receive."

Gutierrez and Ioda argued Thompson's second cause of action for conversion failed because Thompson could not "show that it had ownership or a right to the commissions on the Prospect and Belmont properties . . . ." On Thompson's third cause of action for violating Penal Code section 496, Gutierrez and Ioda argued that Thompson did not allege they acted with criminal intent and that "there can be no theft because [Thompson] has not shown any entitlement to any commissions." Finally, Gutierrez and Ioda argued Thompson's restitution cause of action failed because Thompson "cannot show it was entitled to the commissions payable by [Gutierrez and Ioda] and that [they] are in possession of ill-gotten gains."

C.    *The Trial Court Sustains the Demurrer Without Leave To Amend*

The trial court sustained the demurrer to the first cause of action for fraud without leave to amend.[2]  The court ruled Thompson's first cause of action for fraud was barred by the statute of frauds.  The court stated that "the only writing that

---

[2]    Thompson's appellant's appendix does not include the trial court's July 21, 2023 order sustaining the demurrer without leave to amend.  Gutierrez and Ioda argue that, in the absence of that order, we "must presume that the appealed judgment or order is correct and affirm."  We augment the record pursuant to California Rules of Court, rule 8.155(a)(1)(A) to include the court's July 21, 2023 order.

7

relates to a commission is between the seller's broker and buyers' broker [i.e., Thompson]" and that this agreement "does not show on its face that [Gutierrez and Ioda] employed [Thompson] for real estate commissions, as this is an agreement for commission between the seller of the properties' broker and [Thompson], not between" Gutierrez or Ioda and Thompson. Citing *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, the court stated that, while Thompson "attempts to argue it does not seek to recover commissions from selling the properties, it still relies on an oral compensation agreement between [Thompson] and [Gutierrez and Ioda] for the allegation it is owed its money back. Moreover, [Thompson] cannot show it justifiably relied on [Gutierrez's and Ioda's] representations." The court also ruled Thompson had not pleaded its fraud cause of action with the required specificity.

The court sustained the demurrer to Thompson's second cause of action for conversion and third cause of action for violation of Penal Code section 496 for the same reasons. The court stated that "[p]ermitting a cause of action for conversion on an oral contract of this nature would achieve the same result, and is, thus, barred" and that Thompson was "a licensed real estate broker and knew that such an agreement was unenforceable." Finally, again citing *Phillippe*, the trial court sustained the demurrer to the cause of action for restitution because "allowing a broker to recover on an oral contract under theories of unjust enrichment or estoppel would eviscerate the purpose of the statute of frauds and the licensure scheme for real estate brokers."

# DISCUSSION

A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) We "'accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.'" (*Capito v. San Jose Healthcare System, LP* (2024) 17 Cal.5th 274, 280.) We "'accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Bath v. State of California* (2024) 105 Cal.App.5th 1184, 1193; see *River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1227.) "We liberally construe the pleading with a view to substantial justice between the parties." (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 190.)

B. *The Trial Court Erred in Sustaining the Demurrer to Thompson's First Cause of Action for Fraud Without Leave To Amend*

The statute of frauds declares invalid any "agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate" unless that agreement is in writing and signed by the broker's client. (Civ. Code, § 1624, subd. (a)(4); see *Phillippe v. Shapell Industries*, *supra*, 43 Cal.3d at p. 1255 ["an agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate is invalid unless the

9

agreement or some note or memorandum of the agreement is in writing and subscribed by the party to be charged or by his agent"]; *Gann v. Williams Brothers Realty, Inc.* (1991) 231 Cal.App.3d 1698, 1705-1706 [statute of frauds applies "to the collection of compensation or commission by the agent or broker"].)  "Once the statute of frauds applies, its bar against relief is absolute and applies no matter how the unhappy broker styles his or her claim to recover compensation or a commission." (*Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 324.)

The statute of frauds did not apply to Thompson's fraud cause of action.  Thompson was not seeking to enforce an oral agreement to pay a commission relating to the purchase or sale of real property, nor was Thompson, in the trial court's (and Gutierrez and Ioda's) words, relying on an oral agreement between Thompson and Gutierrez and Ioda (or anyone else). That the $68,125 Thompson used to pay Gutierrez and Ioda came from the commissions Thompson earned on the Belmont and Prospect deals did not change the (alleged) fact Gutierrez and Ioda induced Thompson to part with that money by falsely representing they would build townhomes (which they had no intention of doing) and retain Thompson to sell them (which they also had no intention of doing).  As the court in *Kett v. Graeser* (1966) 241 Cal.App.2d 571 stated in an analogous fraud case involving false representations by the defendants to repair residential property if the plaintiffs purchased it:  "The action is not based on a contract which is required to be in writing by the statute of frauds.  It is not an action to enforce a contract for sale of real property, nor an action for damages for breach of such contract.  The property has been sold and paid for.  The action is

10

in tort based on [an] alleged collateral oral promise made to induce appellants to buy, and made without intention to perform, a promissory fraud.  This kind of fraud is specifically recognized in our law." (*Id.* at p. 573; see *Hartman v. Shell Oil Co.* (1977) 68 Cal.App.3d 240, 250 [statute of frauds did not apply to fraud claims where the plaintiff "sought damages for false representations inducing him to enter into the contracts in question"].)

The trial court relied, and Gutierrez and Ioda rely, principally on *Phillippe v. Shapell Industries*, *supra*, 43 Cal.3d 1247, where the Supreme Court held "a licensed real estate broker or salesperson cannot assert equitable estoppel against a statute of frauds defense to an oral commission agreement that is subject to Civil Code section 1624(d) unless there is a showing of actual fraud by the party to be charged under the invalid oral agreement." (*Id.* at p. 1264.)  The plaintiff in that case was a real estate broker who found a property for the buyer, but the buyer ultimately purchased the property directly from the seller.  (*Id.* at pp. 1253-1254.)  The broker claimed the buyer had orally agreed to pay the broker a commission, and the buyer refused to pay it. (*Id.* at pp. 1251-1253.)  The Supreme Court held that the statute of frauds applied and that the broker could not invoke the doctrine of estoppel to prohibit the buyer from asserting the statute of frauds.  (*Id.* at pp. 1259-1262.)  The Supreme Court stated that "a broker's presumed knowledge of the statute of frauds precludes him from showing the reasonable reliance on an oral agreement that is necessary to assert equitable estoppel." (*Id.* at p. 1270.)

*Phillippe* is distinguishable.  Thompson is not invoking estoppel to assert the statute of frauds to collect on otherwise

11

unenforceable oral agreements for commissions. (See *Phillippe v. Shapell Industries*, *supra*, 43 Cal.3d at p. 1252 ["The primary issue before us is whether a licensed real estate broker may assert equitable estoppel against a statute of frauds defense in an action by the broker to recover a real estate commission."].) Thompson is alleging a straight fraud cause of action based on material misrepresentations by Gutierrez and Ioda that, if Thompson gave them the $68,125 it had earned in the Prospect and Belmont transactions, Gutierrez and Ioda would retain Thompson to sell new townhomes Gutierrez and Ioda falsely stated they were going to build. Thompson alleged its reliance was reasonable because Gutierrez and Ioda had honored similar arrangements in a prior transaction with Thompson and with other brokers and because those kinds of deals were customary among developers and brokers in the area. Had Thompson sued for unpaid or lost commissions on the seven townhomes, Thompson's presumed knowledge of the statute of frauds would have precluded it from alleging reasonable reliance and avoiding the statute of frauds. (*Phillippe*, at p. 1270; see *Westside Estate Agency, Inc. v. Randall*, *supra*, 6 Cal.App.5th at p. 326 [because "[u]nlike everyone else, licensed brokers 'obtain their license only after they demonstrate knowledge of laws relating to real estate transactions,' including the statute of frauds," it is unreasonable for brokers to rely on unwritten commission agreements, "which precludes them from invoking the doctrine of equitable estoppel except in cases of actual fraud"].) But Thompson was not suing for that; Thompson was suing to get back the $68,125 it gave Gutierrez and Ioda in reliance on their false statements. As the Supreme Court stated in *Phillippe*: "There may be other types of promises on which a broker could reasonably rely." (*Phillippe*, at

12

p. 1270.)  The misrepresentations by Gutierrez and Ioda were those types of false promises.

Finally, though Gutierrez and Ioda did not make the argument until their reply memorandum in support of the demurrer, the trial court ruled Thompson did not plead its fraud cause of action with the required specificity.  The court was correct on this point.  (See *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 33-34 [plaintiff must plead fraud "with factual specificity"]; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [the fraud "particularity requirement necessitates pleading *facts* which show how, when, where, to whom, and by what means the representations were tendered" (internal quotation marks omitted)].)  Thompson did not plead any particularities about the representations by Gutierrez and Ioda on which it relied.  (See *Small*, at p. 184 ["'In California, fraud must be pled specifically; general and conclusory allegations do not suffice."].)  Such a defect, however, is easily cured, and Thompson is entitled to leave to amend to allege the particulars of its fraud cause of action.  (See *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041 [when a demurrer "'is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse'"]; *Southern California Gas Leak Cases* (2017) 18 Cal.App.5th 581, 586 ["If the complaint is insufficient, but there ""is a reasonable possibility that the defect can be cured by amendment,"" plaintiff is entitled to have the opportunity to amend."].)

C. *The Trial Court Erred in Sustaining the Demurrer to Thompson's Second Cause of Action for Conversion*

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240, internal quotation marks omitted.) "'Money can be the subject of an action for conversion if a specific sum capable of identification is involved.'" (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1452; see *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1151.) Thompson alleged that it had an immediate right to possess, and the contractual right to receive from escrow, the $68,125 in commissions it earned from the Prospect and Belmont purchases; that Gutierrez and Ioda wrongfully "converted said monies for their own use and enrichment"; and that Thompson was damaged in the specific sum of $68,125. Those allegations stated sufficient facts to constitute a cause of action for conversion.

Gutierrez and Ioda argued in their demurrer Thompson did not state a cause of action for conversion because Thompson "cannot show that it had ownership or a right to the commissions on the Prospect and Belmont properties . . . ." The trial court sustained the demurrer to Thompson's conversion cause of action because such a cause of action would allow Thompson to recover on an oral contract in violation of the statute of frauds. And on appeal Gutierrez and Ioda argue that the conversion cause of action "is based on Thompson's purported entitlement to commissions" and that "permitting a cause of action for

14

conversion on an oral contract would also abrogate the statute of frauds."

As discussed, all of these statements are wrong. Thompson is not seeking to recover commissions, relying on an oral contract, or basing its conversion cause of action on entitlement to commissions. Thompson earned $68,125 in commissions, had a right to receive that amount pursuant to two written contracts, and was induced to transfer that money to Gutierrez and Idola. The trial court erred in sustaining the demurrer to Thompson's conversion cause of action.

> D.   *The Trial Court Did Not Err in Sustaining the Demurrer to Thompson's Third Cause of Action for Violation of Penal Code Section 496*

Penal Code section 496, subdivision (a), states that every person "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," is subject to imprisonment. Section 496, subdivision (c), "articulates a right to special civil remedies when a violation of [section 496, subdivision (a),] has occurred." (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 346-347.)

"A plaintiff may recover treble damages and attorney's fees under [section 496, subdivision (c),] when property has been obtained in any manner constituting theft." (*Siry Investment, L.P. v. Farkhondehpour*, *supra*, 13 Cal.5th at p. 361; see *Switzer v. Wood* (2019) 35 Cal.App.5th 116, 126; *Bell v. Feibush* (2013)

15

212 Cal.App.4th 1041, 1048.) The "term 'theft' in section 496 includes forms of theft listed 'in the general theft statute (Pen. Code, § 484) . . . .'" (*Siry Investment*, at p. 350, fn. 11), which defines theft to include "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of money." (§ 484, subd. (a).) However, "not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft. To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" (*Siry Investment*, at pp. 361-362.)

In their demurrer Gutierrez and Ioda argued Thompson did not state a cause of action for violation of Penal Code section 496 because it did not allege they acted with any criminal intent and because "there can be no theft because [Thompson] has not shown any entitlement to any commissions." The trial court sustained the demurrer to Thompson's cause of action for violation of Penal Code section 496 because, according to the court, "the only allegations under which [Thompson] might argue that the commission was stolen is by means of fraud, and that argument fails for the reasons described above."

The trial court was right, but for the wrong reason. As discussed, Thompson stated a fraud cause of action, so the court erred in ruling the cause of action for violation of Penal Code section 496 failed for the same reasons the fraud cause of action failed. But Thompson did not sufficiently allege Gutierrez and Ioda acted with criminal intent. To be sure, there were allegations of fraud. But there were no allegations describing

16

anything more than a (n important but) non-criminal business dispute between sophisticated commercial parties.

E.    *The Trial Court Erred in Sustaining the Demurrer to Thompson's Fourth Cause of Action for Restitution Without Leave To Amend*

"'[R]estitution is a remedy and not a freestanding cause of action.'" (*Hamilton & High, LLC v. City of Palo Alto* (2023) 89 Cal.App.5th 528, 572, fn. 14; see *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 362.) It is synonymous with unjust enrichment. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 233.) Although the trial court did not err in sustaining the demurrer to the (non-existent) cause of action for restitution, the court abused its discretion in denying Thompson leave to amend to allege restitution as a remedy for an appropriate cause of action.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining Gutierrez and Ioda's demurrer without leave to amend and enter a new order overruling the demurrer to the second cause of action for conversion, sustaining the demurer to the first cause of action for fraud and fourth cause of action for restitution with leave to amend, and sustaining the demurrer to the third cause of action for violation of Penal Code section 496 without leave to amend. Thompson is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

18